UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EVELYN PEREZ, JORGE PEREZ, ANNETTE GRENIER, and BERNARD GRENIER, individually and on behalf of all other similarly situated individuals, | Case No. 23-cv-1665 |
| *Plaintiffs*, | CLASS ACTION COMPLAINT |
| v. | |
| FIFTH THIRD BANCORP, DIVIDEND FINANCE INC., DIVIDEND SOLAR FINANCE LLC, DIVIDEND SOLAR, INC. | |
| *Defendants.* | |

Plaintiffs Evelyn Perez, Jorge Perez, Annette Grenier, and Bernard Grenier (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated, assert the following against Defendants Fifth Third Bancorp ("Fifth Third"), Dividend Finance, Inc., Dividend Solar Finance LLC, and Dividend Solar, Inc. (collectively, the "Dividend Defendants" and together with Fifth Third, "Defendants") based upon personal knowledge, information and belief, and the investigation of counsel.

## **INTRODUCTION**

1.     This action arises out of Defendants' unlawful use of solar panel sales and installation company Vision Solar LLC ("Vision Solar")— a now-insolvent New Jersey-based company—to unfairly and deceptively originate thousands of residential and home improvement loans to homeowners in Connecticut, Florida, and elsewhere across the country.

2.     Defendants collectively own and operate the residential and home improvement financing business branded "Dividend Finance." Dividend Finance's main business is providing

loans to homeowners so that homeowners may purchase residential solar photovoltaic systems ("Solar Panel System(s)").

3. Defendants earn revenue via Dividend Finance through loan origination fees, closing fees, servicing fees, interest charged on loan balances, and fees charged for securitizing loans Defendants sell to third party investors. The more loans Defendants issue, the more revenue they earn from these activities.

4. Defendants do not themselves employ any sales personnel, making Defendants' business model dependent on companies such as Vision Solar to continuously supply customer borrowers.

5. During the Class Period, Defendants unfairly and deceptively used Vision Solar to originate thousands of loans for Defendants, including the loans issued by Defendants to Plaintiffs. Defendants earned millions of dollars by charging fees for lending money to Plaintiffs and members of the class, charging fees for loan servicing (*i.e.*, enabling borrowers to make payments), charging interest on loan principal balances, and charging fees to third parties for securitizing these loans.

6. Unfortunately for Plaintiffs and members of the Class—but well known to Defendants—Vision Solar drove sales and loan originations by engaging in an illegal common and systematic course of unfair and deceptive business practices, including, *inter alia*, (1) uniform written misrepresentations that Vision Solar would obtain all necessary permits and licenses required to install Solar Panel Systems, (2) relying on high pressure sales tactics deliberately targeted vulnerable populations (including low-income, disabled, and elderly individuals) for sales calls and in home visits, and (3) systematically misrepresenting the benefits of Solar Panel Systems

including homeowners' eligibility for tax credits, the performance of the Solar Panel Systems, and the financial terms of the loans and leasing transactions with Defendants.

7.     Defendants incentivized Vision Solar to engage in this behavior by paying Vision Solar compensation amounting to at least 90% of the amount borrowed by homeowners from Defendants without requiring confirmation that the Solar Panel Systems were permitted, properly installed, hooked up to the power grid, or functioning at all.

8.     Because Defendants paid Vision Solar 90% of the loan amount as compensation up front, Vision Solar had no incentive to ensure the Solar Panel Systems sold to homeowners such as Plaintiffs and members of the Class were installed properly or functioned as Vision Solar represented.

9.     Specifically, Defendants paid Vision Solar 30% of the loan balance upon electronic receipt of a signed financing agreement from a homeowner, with another 60% paid to Vision Solar upon receipt of a photograph purporting to show installation of a functioning Solar Panel System. Defendants took no steps to actually verify that any Solar Panel System sold by Vision Solar was functioning.

10.    Astonishingly, Defendants continued with this practice even as thousands of Vision Solar customers who financed through Defendants complained directly to Defendants, after multiple television stations exposed Vision Solar's practices *and* after multiple state attorneys general and federal law enforcement agencies filed suit against Vision Solar for its conduct.

11.    Indeed, in recognition of the egregiousness of Vision Solar's conduct, the attorneys general of Arizona (the "AZ AG"), Connecticut (the "CT AG"), and Florida (the "FL AG"), as well as the U.S. Department of Justice (the "DOJ"), and the Federal Trade Commission (the "FTC") have all filed enforcement actions against Vision Solar.

12.   Nevertheless, Defendants continued paying Vision Solar to originate loans because Vision Solar made Defendants money. Importantly, Defendants do not carry the risk of loan performance on their own balance sheet. Instead, Defendants securitize the loans they issue to homeowners, passing off the risk to the purchasers of these securities.

13.   As a result of its relationships with solar panel sales companies such as Vision Solar, seventeen state attorneys general are investigating Defendants themselves.

14.   Defendants' conduct has saddled thousands of homeowners throughout the United States with tens of thousands of dollars of oppressive debt taken out for the purchase of what turned out to be non-functioning, non-permitted Solar Panel Systems installed on their residences that Defendants are actively seeking to collect on.

15.   Plaintiffs and members of the Class thus seek relief from Defendants in the form of restitution, disgorgement of profits, recission of the sales and financing agreements, and damages.

## PARTIES

I.   **PLAINTIFF ALLEGATIONS**

   A.   **THE GRENIER PLAINTIFFS**

16.   Plaintiffs Annette Grenier and Bernard Grenier (the "Grenier Plaintiffs") are and were at all relevant times domiciled in the State of Connecticut.

17.   Vision Solar unfairly and deceptively induced the Grenier Plaintiffs to borrow from Defendants to purchase two Solar Panel Systems—one for a two-family home located in Windham, Connecticut and another for a home located in Plainfield, Connecticut— in October 2022.

18.   Specifically, Vision Solar made the following misrepresentations, both written and oral, to the Grenier Plaintiffs regarding the Solar Panel Systems:

a. Written misrepresentations in the Vision Solar contracts reviewed, signed, and relied upon by the Grenier Plaintiffs stating that (1) "The services to be provided by Vision Solar shall include . . . [a]ll necessary permitting filings, Uniform Commercial Code filings, Utility Interconnection agreements, and New Jersey Clean Energy Program filings or related filings"; (2) that "[a]ll work performed by Vision Solar will be done in accordance with local, state, and national electrical codes." (emphasis added); and (3) that "Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein."

b. That the Grenier Plaintiffs would save thousands of dollars on their electric bill and the Solar Panel Systems would "pay for themselves";

c. That Vision Solar would repair their roof at no cost if needed; and

d. That the Grenier Plaintiffs would receive a large federal tax credit to help offset the cost of the Solar Panel System.

19. Contrary to what the Grenier Plaintiffs were promised, Vision Solar:

a. Did not obtain the permits required to install and connect the Solar Panel System to the power grid, and as a result the Plainfield house was sorely delayed, and the Windham house has yet to be activated more than a year later.

b. The Grenier Plaintiffs have not seen any savings on their monthly utility bills; and

c.   The Grenier Plaintiffs have yet to receive any tax credit and were told by their accountant that they will not receive any tax credit as things currently stand.

20.   In addition to the misrepresentations made by Vision Solar to the Grenier Plaintiffs, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce the Grenier Plaintiffs into agreeing to purchase and finance a Solar Panel System with Defendants, including, but not limited to pressuring the Grenier Plaintiffs to sign the agreement the same day as the home inspection.

21.   Contrary to these representations, the Grenier Plaintiffs the Solar Panel System installed at the Windham home was improperly installed, out of compliance with local laws and licenses and without the necessary permits. As a result, the system installed at the Grenier Plaintiffs' Windham home has thus never been functional.

22.   Despite the Windham Solar Panel System's non-functionality, the Greniers have been making payments to Defendants attributable to this Solar Panel System.

23.   Additionally, the Solar Panel System installed at the Grenier Plaintiffs' Plainfield home has significantly underperformed compared to the promised performance, and required additional panels to make up the difference, yet still underperforming nevertheless.

24.   Despite the Plainfield Solar Panel System's non-functionality, the Greniers have been making payments to Defendants attributable to this Solar Panel System.

25.   Vision Solar's Concierge and Customer Retention departments have deflected and ignored the Grenier Plaintiffs' complaints by refusing to answer their calls and placing them on hold for indefinite periods of time.

26.     As a result of these misrepresentations and unfair business practice the Grenier Plaintiffs have suffered actual damages, including without limitation, loan payments made to Defendants for an underperforming and nonperforming Solar Panel Systems, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

**B.     THE PEREZ PLAINTIFFS**

27.     Plaintiffs Evelyn and Jorge Perez ("the Perez Plaintiffs") are and were at all relevant times domiciled in the State of Florida. Evelyn Perez is 63 years old, and Jorge Perez is 68 years old.

28.     Vision Solar unfairly and deceptively induced the Perez Plaintiffs to borrow from Defendants to purchase a Solar Panel System in December 2022 when a Vision Solar sales representative visited their home in Florida.

29.     Specifically, Vision Solar made the following misrepresentations, both written and oral, to the Perez Plaintiffs:

    a.     Written misrepresentations in the Vision Solar contract reviewed, signed, and relied upon by the Perez Plaintiffs stating that (1) "The services to be provided by Vision Solar shall include . . . [a]ll necessary permitting filings, Uniform Commercial Code filings, Utility Interconnection agreements, and New Jersey Clean Energy Program filings or related filings"; (2) that "[a]ll work performed by Vision Solar will be done in accordance with local, state, and national electrical codes." (emphasis added); and (3) that "Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or

local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein."

b.    That the Perez Plaintiffs would save thousands of dollars on their electric bill and the Solar Panel System would "pay for itself";

c.    That Vision Solar would repair their roof at no cost if needed; and

d.    That the Perez Plaintiffs would receive a large federal tax credit to help offset the cost of the Solar Panel System.

30.    Contrary to what the Perez Plaintiffs were promised, Vision Solar:

a.    Did not obtain the permits required to install and connect the Solar Panel System to the power grid, and as a result, the Perez Plaintiffs have received notices from the municipality they live in that they would either have to pay a potential fine of $1,000 per week or there would have to be demolition of the structure lacking a permit;

b.    The Perez Plaintiffs have not seen any savings on their monthly utility bills; and

c.    The Perez Plaintiffs have yet to receive any tax credit and were told by their accountant that they will not receive any tax credit until the panels are turned on.

31.    In addition to the misrepresentations made by Vision Solar to the Perez Plaintiffs, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce the Perez Plaintiffs, seniors aged 63 and 68, into agreeing to purchase and finance a Solar Panel System with Defendants, including, but not limited to:

a.    Staying in their home for well beyond three hours;

    b.    Eliciting sympathy to further the sales pitch by informing the Perez Plaintiffs about the salesperson's personal challenges, such as being a drug addict who just lost a friend to a fentanyl overdose and needing to make a sale because he was broke; and

    c.    Pressuring the Perez Plaintiffs to sign the agreement the same day as the visit, without allowing for their review.

32.    Vision Solar installed the Solar Panel System in the first week of January 2023 without obtaining permits and never obtained the required permits. As a result, the Solar Panel System installed at the Perez residence has never obtained permission to operate from their municipality, has never functioned at all, and is not hooked up to the power grid.

33.    The Perez Plaintiffs have also been damaged by Vision Solar's shoddy construction and workmanship, such as the Solar Panel System failing an inspection due to missing DC converters and also failing local fire inspections.

34.    Vision Solar's Concierge and Customer Retention departments have deflected and ignored the Perez Plaintiffs' complaints, including by:

    a.    Denying their request to cancel their loan;

    b.    Misrepresenting to Channel 6 News their communication with the Perez Plaintiffs; and

    c.    Not responding to their calls or other inquiries.

35.    The Perez Plaintiffs have been forced to attend hearings with the City of Sunrise Magistrate on several occasions to address fines being levied on the Perez's stemming from Vision Solar's and Defendants' conduct.

36.     Despite being well aware of and continuing to enable Vision Solar's conduct, Defendants have refused to cancel the contract and instead permitted Vision Solar to make payments on behalf of the Perez Plaintiffs, conduct meant to conceal Defendants' own misconduct as well as that of Vision Solar.

37.     As a result of these misrepresentations and unfair business practice the Perez Plaintiffs have suffered actual damages, including without limitation, loan payments made to Defendants for an underperforming or nonperforming Solar Panel System, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar and/or Defendants, and other economic and non-economic harm.

## II.    DEFENDANTS

38.     Defendant Dividend Finance, Inc. is a corporation incorporated and organized under the laws of the State of Delaware. Defendant Dividend Finance's principal place of business is located at 1 California St., Ste 1500, San Francisco, CA 94111.

39.     Defendant Dividend Solar Finance LLC is a corporation incorporated and organized under the laws of the State of Delaware. Defendant Dividend Solar Finance's principal place of business is located at 1 California St., Ste 1500, San Francisco, CA 94111.

40.     Defendant Dividend Solar, Inc. is a corporation incorporated and organized under the laws of the State of Delaware. Defendant Dividend Solar's principal place of business is located at 1 California St., Ste 1500, San Francisco, CA 94111.

41.     Defendant Fifth Third Bancorp ("Fifth Third") is a for-profit corporation organized and incorporated under the laws of the State of Ohio. Fifth Third Bancorp's principal place of business is located in Cincinnati, Ohio. In May of 2022, Fifth Third acquired the Dividend Finance business, including the Dividend Defendants Dividend Finance, Inc., Dividend Solar Finance

LLC, and Dividend Solar, Inc. Since acquiring Dividend Finance in May 2022, Fifth Third has

operated and marketed Dividend Finance (including on Dividend Finance's LinkedIn, Facebook,

and X (formerly Twitter) pages) as "a division of Fifth Third Bank."

## JURISDICTION AND VENUE

42.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §

1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the

proposed Class exceed $5,000,000, exclusive of interest and costs, and at least one member of the

Class is a citizen of a State different from Defendants.

43.    Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and (c)

because each Defendant transacts business in, is found in, and/or has agents in this District and

because some of the actions giving rise to this complaint took place within this District.

44.    The Court has personal jurisdiction over each Defendant. Each Defendant

transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of

the conduct alleged herein throughout the United States, including in this District. The conduct

was directed at, and has had the effect of, causing injury to persons residing in, located in, or doing

business throughout the United States, including in this District.

## SUBSTANTIVE ALLEGATIONS

45.    Defendants used Vision Solar to unfairly and deceptively induce thousands of

homeowners into taking out loans to purchase unpermitted, unlicensed, non-functioning Solar

Panel Systems which failed to deliver the promised financial benefits.

46.    Defendants' motivations were simple: they profit from each loan they issue to fund

a purchase of a Solar Panel System sold by Vision Solar. Defendants profit via (1) fees and interest

charged to homeowners pursuant to the loan agreements; and (2) fees earned securitizing and selling the loans to third parties.

47.     Defendants incentivized Vision Solar to convince homeowners to borrow from Defendants to buy Solar Panel Systems by paying Vision Solar at least 90%, but often 100% of the balance of each loan originated by Vision Solar without requiring that Vision Solar prove that the Solar Panel Systems they sold to homeowners were installed properly, functioning, permitted, or even hooked up to the power grid.

48.     Instead, Defendants' paid Vision Solar 30% of the loan balance taken out by a borrower upon receipt of an electronic copy of a financing agreement from Vision Solar. Defendants then paid Vision Solar 60% of the loan balance upon receipt of a photograph purporting to show a properly installed fully functioning Solar Panel System on a borrowers' residence.

49.     Most homeowners require financing to purchase Solar Panel Systems because the typical price of a Solar Panel System is anywhere from $10,000 to $60,000, a cost most of them cannot afford to pay out-of-pocket.

50.     Defendants' loans typically carry 20-to-25-year terms and add substantial interest to the overall purchase price of Vision Solar's Solar Panel Systems.

51.     Defendants profit directly from borrowers by adding thousands of dollars in fees and interest to the purchase price or lease payment amounts.

52.     Additionally, unlike traditional banks that finance their loans with deposits and therefore have an incentive to ensure that borrowers are able to make the payments on their loans, Defendants offload repayment risk onto investors, who buy packages of loans called solar asset-backed securities.

53.     Because Defendants sell the loans they issue, any incentive to monitor the behavior of Vision Solar to ensure that the origination of the loans is free of unfairness, deception, or fraud—factors which might hinder repayment—is outweighed by the incentive to simply finalize and issue as many solar asset-backed loans as possible and then offload those loans to third parties.

54.     Defendants were, in fact, well aware of Vision Solar's conduct. During the Class Period, many members of the Class, including Plaintiffs, complained directly to Defendants that their loans had been placed in repayment despite not receiving functional Solar Panel Systems.

55.     The ethical and lawful response to these complaints would have been to rescind the loans and sever the business relationship with Vision Solar. Instead, Defendants took whatever action necessary to avoid cancelling the loans and to keep the customers potentially on the hook for repayment.

56.     For example, Defendants typically responded to these complaints by threatening Vision Solar's homeowner victims such as Plaintiffs with legal action or negative credit consequences, which typically coerced Vision Solar's victims to pay Defendants for an often-non-functioning product.

57.     Defendants also took steps to actively conceal Vision Solar's conduct from the public, and most importantly, from the third-party investors to which Defendants sell solar asset backed securities, lest they know they are buying bundles of fraudulently induced loans.

58.     For example, to prevent outside knowledge about the non-functioning of Solar Panel Systems, Defendants have occasionally granted deferments to customers who complained about having non-functioning Solar Panel Systems that were installed without the requires permits being obtained and were thus no hooked up to the power grid.

59.     Alternatively, Defendants allowed Vision Solar to make payments to Defendants on behalf of customers (such as the Perez Plaintiffs) whose Solar Panel Systems have not actually been connected to the power grid due to a lack of permitting.

60.     In other instances, Defendants took the position that Vision Solar would be responsible for reimbursing customers who had made payments prior to Vision Solar obtaining Permission to Operate, though Vision Solar rarely, if ever, reimbursed such customers.

61.     Defendants engaged in these actions, and others, to avoid at any cost recognition of the non-performance of loans that they had packaged and sold to third-party investors attributable to unfairness, deception, and/or fraud on the part of one of Defendants' most prolific Solar Panel System loan originators: Vision Solar.

62.     Recognition of the non-performance would not just have objectively reduced the value of the solar asset-backed securities sold by Defendants but also would have subjected it to liability for making misrepresentations regarding the likelihood of performance of the loans they were packaging and selling.

## I.     VISION SOLAR USED UNFAIR AND DECEPTIVE TACTICS TO ORIGINATE LOANS FOR DEFENDANTS.

63.     Vision Solar systematically misrepresented the services they would provide and the capabilities of the Solar Panel Systems they sold, and the financial benefits of Solar Panel System ownership in order to provide Defendants with a continuous supply of customer borrowers.

64.     For example, Vision Solar provided each prospective customer with a uniform set of written representations stating that Vision Solar would obtain all necessary permits and licenses necessary to install the Solar Panel Systems despite knowing that Vision Solar would do not such thing. Vision Solar required each customer to review these representations and sign the document.

The Grenier Plaintiffs, Perez Plaintiffs, and every member of the Class reviewed these representations.

65.     Additionally, Vision Solar's training managers trained salespeople to utilize a common core set of falsehoods, misrepresentations, and pressure tactics designed to induce homeowners to borrow money from Defendants for the purchase of Solar Panel Systems, including:

a.     Misrepresenting that Vision Solar's contractors were adequately licensed to perform the work necessary to install Solar Panel Systems.

b.     Misrepresenting the implications of a consumer's signature, such as claiming it was only for "preapproval" or, alternatively, falsely stating that a contract had already been established prior to signature;

c.     Running a hard credit check without consent and then using the negative credit consequences of the hard credit check to induce a consumer to purchase a Solar Panel System;

d.     Misrepresenting homeowner's eligibility for a federal tax credit for as much as 26% of the cost of the Solar Panel System to offset the cost of the Solar Panel Systems;

e.     Misrepresenting the terms of the financing agreements with Defendants, including purposefully concealing that if homeowners did not make a payment equal to 26% of the contract price to pay down the loan principal within 18 months, their payments to Defendants would increase substantially;

f.      Misrepresenting the performance of Vision Solar's Solar Panel Systems, such as claiming the Solar Panel Systems would "pay for themselves" by producing enough energy to more than offset loan or lease payments; and

66.     In addition to relying on the above systemic misrepresentations, Vision Solar's salespeople employed unfair tactics designed to overcome consumers' resistance, such as:

a.      Deliberately targeting populations Vision Solar believed would be vulnerable to undue influence, such as low-income areas and retirement communities;

b.      Staying in consumers' homes beyond the period they were welcome, only agreeing to leave if a consumer signed a sales and financing agreement;

c.      Discouraging consumers from seeking legal advice before signing agreements;

d.      Presenting contracts or documents for electronic signature on a salesperson's mobile phone or tablet, depriving consumers of the opportunity to adequately review the terms of the agreements; and

e.      Delaying the provision of a copy of the signed agreements to consumers until after the recission period passed, depriving homeowners of the ability to exercise their rights of cancellation.

**A.      VISION SOLAR'S UNIFORM WRITTEN MISREPRESENTATIONS INDUCED PLAINTIFFS AND MEMBERS OF THE CLASS TO BORROW FROM DEFENDANTS.**

67.     Vision Solar made the following written representations in a standard uniform presented to every prospective customer. To purchase a Solar Panel System from Vision Solar, a

customer was required to sign the standard uniform contract containing these representations acknowledging that they had read its terms. The contract contained the following representations:

    a.     "The services to be provided by Vision Solar shall include . . . All necessary permitting filings, Uniform Commercial Code filings, Utility Interconnection agreements, and New Jersey Clean Energy Program filings or related filings"

    b.     "All work performed by Vision Solar will be done in accordance with local, state, and national electrical codes."

    c.     "Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein."

68.    Instead of fulfilling these obligations, Vision Solar ignored the permitting and licensing requirements in the jurisdictions they operated in, including Connecticut and Florida, a fact admitted to by Vision Solar publicly in a television interview.

69.    As alleged by numerous state attorneys general Vision Solar regularly and knowingly installed Solar Panel Systems without obtaining the required permitting, which meant that the Solar Panel Systems were not hooked up to the power grid and were not operational.

70.    Vision Solar also applied for town electrical permits falsely using the credentials of a licensed electrician not employed with Defendant at the time of the applications or without the authorized signature of such electrician.

71.    Vision Solar also offered and installed solar systems without a duly licensed electrician to perform the electrical work, including but not limited to the connection of the solar system to the residence's existing electrical system or utility meter.

72.    These failures are in direct contravention of the uniform written representations made to customers, including Plaintiffs.

73.     Despite the above, the resulting customer complaints, and regulatory action, Defendants continued allowing Vision Solar to originate loans for Defendants and Defendants continued paying Vision Solar for those loans.

74.     Moreover, when the Perez Plaintiffs notified Defendants of Vision Solar's conduct via letter earlier in 2023, Defendants acknowledged Vision Solar's conduct but refused to cancel their loans.

75.     Defendants took insufficient steps to verify that the Solar Panel Systems installed at the residences of Plaintiffs and members of the Class (including the Bernier Plaintiffs and Perez Plaintiffs) were done so in compliance with permitting and licensing requirement, or whether or not the Solar Panel Systems were even functioning. Defendants nevertheless placed the loans originated by Vision Solar into repayment, requiring Plaintiffs to make payments for non-functioning and defectively installed Solar Panel Systems.

76.     Afraid of legal action threatened by Defendants and/or the negative impact to their credit that could result from nonpayment, many Plaintiffs and members of the Classes paid thousands of dollars to Defendants while their Solar Panel Systems were not functioning due to a lack of Permission to Operate.

**B.     VISION SOLAR SYSTEMATICALLY EMPLOYED A CORE SET OF ADDITIONAL MISREPRESENTATIONS TO INDUCE PLAINTIFFS AND MEMBERS OF THE CLASS TO BORROW FROM DEFENDANTS.**

77.     As detailed by Plaintiffs, the attorneys general of Arizona, Connecticut, and Florida the DOJ, the FTC and the investigative teams of multiple television stations, Vision Solar employed a core set of misrepresentations regarding the performance of the Solar Panel Systems that Vision Solar sold to deceptively and unfairly induce homeowners into taking out loans to fund purchases of Solar Panel Systems.

78.     Vision Solar developed a training regime for its salespeople, whereby they were instructed to engage in unfair, deceptive, and fraudulent tactics, including misrepresenting the performance of the Solar Panel Systems.

79.     Specifically, Vision Solar's salespeople systematically misrepresent the output the Solar Panel Systems are capable of, which induces consumers into believing the systems "pay for themselves."

80.     Rather than "pay for themselves", as Vision Solar salespeople consistently represent, the Solar Panel Systems consistently fail to provide enough electricity to offset their costs, leaving consumers on the hook for more money than they otherwise would have had to pay had they never installed Solar Panel Systems.

81.     Defendants are and have been aware of Vision Solar's misrepresentations regarding the Solar Panel Systems' performance because Defendants have received numerous complaints from customers whose Solar Panel Systems are not functioning as promised, including from Plaintiffs themselves.

82.     Despite knowing that Vision Solar is fraudulently, deceptively, and unfairly mispresenting the Solar Panel Systems they are selling, Defendants continued to enable Vision Solar's behavior by providing financing for Vision Solar.

83.     Plaintiffs and members of the Classes would not have purchased Solar Panel Systems from Vision Solar had they known the truth regarding the Solar Panel Systems' performance.

### C.     VISION SOLAR MISREPRESENTED HOMEOWNERS' ELIGIBILITY FOR TAX CREDITS.

84.     Vision Solar knowingly misrepresented homeowners' eligibility for federal and state tax credits to induce them into Solar Panel System financing agreements.

85.     Most Vision Solar customers, including Plaintiffs, do not qualify for the tax credit or do not have the requisite taxable income to receive a tax credit equal to 26% of the price of a Solar Panel System.

86.     Vision Solar knows this yet instructs all of its salespeople to target, and they do target, populations with low incomes and thus little to ability to claim a tax credit.

87.     Vision Solar further preys upon homeowners' lack of tax knowledge and sophistication by misrepresenting homeowners' eligibility for such credits, which fraudulently, deceptively, and unfairly induce them into purchasing Solar Panel Systems from Vision Solar.

88.     Had Plaintiffs known Vision Solar's representations were false, Plaintiffs and members of the Class would not have agreed to purchase Solar Panel Systems from Vision Solar. Some examples of Vision Solar's misrepresentations include:

89.     Defendants reinforced Vision Solar's fraudulent, deceptive, and unfair misrepresentations regarding tax credit eligibility in the way it structured loans and leases.

90.     Defendants' loans begin with an introductory monthly payment amount that remained stable for 18 months. After 18 months, however, Plaintiffs and members of the Classes were expected to make a large payment to the principal of the loan equal to 26% of the purchase price, the same percentage of the purchase price Vision Solar had told homeowners they would receive in the form of a federal tax credit.

91.     If Plaintiffs and members of the Classes did not make this payment, their monthly payments to Defendants would go up substantially.

92.     Despite Vision Solar's representations, Plaintiffs have not received a federal tax credit equal to 26% for the purchase of a Solar Panel System from Vision Solar.

93.     Had Plaintiffs and members of the Classes known the truth regarding their ineligibility for a federal tax credit, they would not have agreed to purchase Solar Panel Systems from Vision Solar and would not have entered into Solar Panel System financing agreements with Defendants.

II.     **PLAINTIFFS AND MEMBERS OF THE CLASS WOULD NOT HAVE BORROWED FROM DEFENDANTS BUT FOR THE MISREPRESENTATIONS.**

94.     Vision Solar's misrepresentations and omissions were material to the Plaintiffs' and members of the Classes' decisions to purchase Solar Panels Systems and obtain financing from Defendants because they directly influenced the Plaintiffs' and members of the Classes' understanding of the costs, benefits, and financing terms associated with the Solar Panel Systems.

95.     Indeed, Plaintiffs and members of the Classes would not have agreed to purchase Solar Panel Systems from Vision Solar or enter into financing transactions with Defendants had Plaintiffs and members of the Classes known the truth regarding the representations and omissions made by Vision Solar.

96.     For example, Vision Solar's written, uniform misrepresentations regarding permitting were crucial for Plaintiffs' and members of the Classes' confidence in the legality and functionality of the Solar Panel System installations. Plaintiffs would not have agreed to purchase Solar Panel Systems and finance their purchase with Defendants had they known they would be required to pay Defendants for a non-functioning and/or unpermitted system for months or years, or indefinitely.

97.     Vision Solar's misrepresentations regarding the federal tax credits associated with the purchase or lease of Solar Panel Systems caused Plaintiffs to believe that they would receive a significant financial benefit from Solar Panel System and that it was a sound investment for the future. The promise of tax credits was a crucial factor in Plaintiffs' decision-making process,

creating an expectation of substantial savings that would offset the initial costs of the solar panel installation, but-for which Plaintiffs would not have obtained large, burdensome loans from Defendants.

98.     Vision Solar's sales representatives made false claims that the Solar Panel Systems would result in significant savings by reducing the amount of power used from the homeowner's current power company. This promise portrayed the purchase of a Solar Panel System as an investment which would "pay for itself" over time and was material to Plaintiffs' and members of the Classes' decisions to purchase Solar Panel Systems and finance with Defendants.

99.     These material misrepresentations were significant for Plaintiffs' decisions to purchase or lease Solar Panel Systems from Defendants. Had Plaintiffs and members of the Classes been aware of the truth regarding the Solar Panel Systems, Vision Solar's practices, and the terms of the financing agreements with Defendants, Plaintiffs would not have purchased Solar Panel Systems or financed with Defendants. The fraudulent, deceitful, and unfair practices employed by Vision Solar, and perpetrated by Defendants as its financing partner, induced Plaintiffs into purchasing Solar Panel Systems via financing agreements with Defendants yet the Solar Panel Systems did not function at all, or as promised, causing Plaintiffs and members of the Classes suffer significant financial losses and damages.

## III.    DEFENDANTS AND VISION SOLAR ARE THE SUBJECT OF NUMEROUS LAW ENFORCEMENT ACTIONS AND INVESTIGATIONS.

100.    On November 7, 2023, Defendant Fifth Third announced in its quarterly 10-Q filing with the U.S. Securities and Exchange Commissions that it "is currently cooperating with investigations related to several civil investigative demands by a number of state attorneys general regarding the lending practices and installer relationships of Dividend Solar Finance, LLC, which the [Fifth Third] acquired in May 2022."

101.    Fifth Third's November 7, 2023 announced follows several actions initiated by state and federal law enforcement authorities. For example, on March 15, 2023, the CT AG initiated a *parens patriae* enforcement action against Vision Solar for predatory practices and deceptive sales tactics violating the Connecticut Home Improvement Act and the Connecticut Unfair Trade Practices Act. Vision Solar's tactics have been described by CT AG William Tong, as "the worst [the office] has seen." The CT AG's description echoes the experience of Plaintiffs and members of the Class herein – that Vision Solar took advantage of low-income, elderly, and disabled homeowners, pressuring them into unaffordable loans for solar panels that were never activated or were installed without proper permits via unfair, high-pressure sales tactics, including instances of altering the scope of work without consent, overstating tax benefits, and using unlicensed contractors to install Solar Panel Systems. Vision Solar engaged in this conduct for the benefit for Defendants.

102.    The Connecticut Attorney General described Vision Solar's conduct as follows:

We're investigating numerous complaints regarding high-pressure solar industry sales tactics, **but Vision Solar's predatory practices are far and away the worst we have seen.** Vision Solar preyed on low-income, elderly, and disabled homeowners, pressuring them into unaffordable loans for solar panels that in some cases were never activated. Their egregious misconduct appears to have violated multiple laws, and we're going to hold them accountable. Our lawsuit seeks to get money back for Vision customers, as well as fines and court orders to stop Vision from engaging in these unfair and deceptive practices.

103.    On July 27, 2023, Arizona Attorney General Kris Mayes, along with the U.S. Department of Justice and the Federal Trade Commission, sued Vision Solar LLC and one of its lead generators, Solar Xchange LLC, and its owner Mark Getts, for violations of the Federal Trade Commission Act, the Federal Telephone Solicitation Rule, the Arizona Consumer Fraud Act, and the Arizona Telephone Solicitations Act. In announcing the action, AZ AG Mayes stated that **"solar is a major investment that should be considered by consumers without being subject**

to unfair pressure tactics. **I will not tolerate dishonest sales practices or harassment through unwanted calls that pressure consumers into unfavorable contracts**." (emphasis added).

104.    On December 4, 2023, Florida Attorney General Ashley Moody announced her office had filed suit against Vision Solar, stating that Vision Solar had **"misled consumers about the solar panel system installation process and relevant incentives or credits, [and] also allegedly failed to successfully complete the permit requirements in setting up consumers' solar grids, resulting in unexpected fines or liens for the customers."** (emphasis added).

105.    In addition to multiple Attorneys General lawsuits, several news stations have conducted investigations or run stories on the tactics employed by Vision Solar.

106.    In Connecticut, an investigation by NBC Connecticut recounted the story of Ruth Greenberger, a Vision Solar and Dividend Finance customer who was deceptively and unfairly sold a Solar Panel System by for $95,000, fair in excess of a reasonable cost for a Solar Panel System. According to Ms. Greenberger, Vision Solar employed several unfair business practices to pressure her into signing and the system installed does not function. In response to NBC Connecticut, Vision Solar admitted to the accusations, stating "I think in that growth, we made a lot of mistakes. We would move quickly … That created a whole litany of problems that we are now facing today."

107.    In Florida, an investigation by Tampa-based ABC News affiliate WFTS uncovered that there have been over 70 complaints filed with the Florida Attorney General's Office and recounted that:

> Tampa retiree Eula Gutierrez and her husband signed up for a $53,000 investment that came with a 25-year payment plan. Gutierrez told the I-Team that the saleswoman convinced her the savings on her power bill would help offset the monthly loan payment of $169.

"She said, but look, you're going to be saving from here to no telling when. You're going to be saving every month because your electric bill will be so small," Gutierrez recalled.

Gutierrez said the installers damaged her roof, which caused a leak in her bathroom while putting on the panels last summer, and they never connected her system to the grid. For the last seven months, the panels have sat on her roof without generating a single watt of electricity.

108.    In response to these stories, Vision Solar *admitted to the* misconduct Plaintiffs allege herein:

As far as permits and installing jobs without them. **We own our past. As we were growing rapidly in your area, we had a problem with our CRM system and for a period of time were installing without permits without knowledge as the system suggested complete and approved**. (emphasis added)

109.    Similarly, an investigative team from a South Florida CBS News affiliate recounted the story of Estela Padilla, a Boca Raton homeowner who "took out a $40,000 loan to finance the panels, and is paying $122 toward the loan each month" but found that "[a] year and a half later, she is still paying for the panels but hasn't seen any savings on her energy bill. That's because her panels were never activated or connected to the power grid."

110.    Another Florida news station, Local News 10 of Broward County, Florida, recounted the story of Tracy Walters, who paid Vision Solar a $21,000 deposit only to have Vision Solar disappear for over a year, causing her to have "tears on phone calls" due to frustration.

111.    Similarly, WFTV 9, an Orlando TV station told the story of a man who was promised that the Solar Panel System installed by Vision Solar would save him $200 a month. Instead, the system delivers on just 6% of the power his family needs, and he has been saddled with over $50,000 in debt to the Financing Companies.

112.    Despite the public attention Vision Solar's conduct garnered, Defendants continued making loans to the victims of Vision Solar because it was wildly profitable for Defendants to do so.

IV.     **VISION SOLAR IS NO LONGER IN BUSINESS.**

113.    Thankfully, Vision Solar is no longer in business. On November 29, 2023, Vision Solar furloughed all employees due to a lack of funding, notifying employees via an email which read:

> We are placing the entire organization on a mandatory furlough. By definition a furlough is a temporary pause of paid employment. For our staff this means that for the time being, no one is to report to the office or work on projects for vision solar.

114.    On December 15, 2023, Vision Solar admitted it had failed to secure additional funding for its operations and had thus "made the incredibly difficult announcement to cease operations indefinitely."

115.    As a result, the victims Vision Solar induced to borrow from Defendants, for Defendants' benefit, are stuck with Solar Panel Systems which are not performing due to defective installation or a failure to secure permits and/or licenses and have nowhere to turn to remedy the situation.

116.    Many, like the Perez Plaintiffs, are facing mounting fines because the systems "installed" at their residences are out of compliance, contrary to Vision Solar's promises.

117.    Unsurprisingly, Defendants believe the homeowners victimized by this conduct should continue to be responsible for the loans they were induced to take out and refuse to cancel the loans.

## CLASS ALLEGATIONS

118.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of a proposed class, defined as:

> All homeowners in Connecticut and Florida who purchased a Solar Panel System from Vision Solar and entered into agreements with Defendants to finance the purchase or lease of the Solar Panel Systems from Vision Solar during the applicable statute of limitations period (the "Class").

**CONNECTICUT SUBCLASS**

119.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2)

and (b)(3) on behalf of a proposed subclass defined as:

> All homeowners in Connecticut who purchased Solar Panel Systems from Vision
> Solar and entered into agreements with Defendants to finance the purchase or lease
> of the Solar Panel Systems from Vision Solar during the applicable statute of
> limitations period (the "Connecticut Subclass").

**FLORIDA SUBCLASS**

120.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2)

and (b)(3) on behalf of a proposed subclass defined as:

> All homeowners in Florida who purchased Solar Panel Systems from Vision Solar
> and entered into agreements with Defendants to finance the purchase or lease of the
> Solar Panel Systems from Vision Solar during the applicable statute of limitations
> period (the "Florida Subclass").

121.    Collectively, the Class, the Connecticut Subclass, and the Florida Subclass are

referred to as "the Classes."

122.    Plaintiffs reserve the right to modify or refine the definitions of the Classes based

upon discovery of new information and to accommodate any of the Court's manageability

concerns.

123.    Excluded from the Classes are: (a) any Judge or Magistrate Judge presiding over

this action and members of their staff, as well as members of their families; (b) Defendants and

Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which

any Defendant or its parents have a controlling interest, as well as Defendants' current or former

employees, agents, officers, and directors; (c) persons who properly execute and file a timely

request for exclusion from the Classes; (d) persons whose claims in this matter have been finally

adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f)

the legal representatives, successors, and assigns of any such excluded persons.

124.    **Ascertainability.** The proposed Classes are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of the Classes. Further, the Classes can be readily identified through records maintained by Defendants.

125.    **Numerosity (Rule 23(a)(1)).** The Classes are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Classes, as herein identified and described, is not known, but upon information and belief there are thousands of individuals and entities that purchased Solar Panel Systems from Vision Solar with funds borrowed from Defendants.

126.    **Commonality (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individuals, including:

a.   Whether Defendants' use of Vision Solar to originate loans in Connecticut constitutes an unfair business practice under Connecticut law;

b.   Whether Defendants' use of Vision Solar to originate loans in Florida constitutes an unfair business practice under Florida law;

c.   Whether Defendants and Vision Solar engaged in a fraudulent and deceptive scheme to induce homeowners to enter into Solar Panel System financing agreements;

d.   Whether Defendants' conduct constitutes fraud, deceit, or unfairness;

e.   Whether Defendants knowingly financed purchases of non-functioning Solar Panel Systems to earns fees for the purpose of securitizing and originating loans, and the subsequent sale of loans to third-party investors.

f.   Whether Defendants collected loan payments from homeowners before the Solar Panel Systems have been connected to the power grid;

g.  Whether Defendants knew Vision Solar salespeople were trained to use fraudulent, deceptive, unfair, and misleading tactics;

h.  Whether Defendants knew Vision Solar targeted vulnerable individuals and engaged in unfair, deceptive, and fraudulent such as running unauthorized credit checks and forging signatures on contracts;

i.  Whether Defendants knew Vision Solar systematically misrepresented the benefits, eligibility for tax credits, and financial terms of the loans;

j.  Whether Defendants knew Vision Solar failed to ensure proper permitting, licensing, and installation of Solar Panel Systems;

k.  Whether Defendants knew Vision Solar's Concierge Service and Customer Retention departments used unfair and deceptive tactics to prevent customers from canceling their contracts;

l.  Whether Defendants supported and actively furthered Vision Solar's misrepresentations by offering loan terms that mislead homeowners into believing they will receive a substantial federal tax credit as a result of Solar Panel System ownership;

m.  Whether Defendants and Vision Solar violated federal and state law;

n.  Whether Plaintiffs and Class members suffered damages as a result of the misconduct alleged herein;

o.  Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

127.    **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed Classes. Plaintiffs and members of the Classes suffered injuries as a result of Defendants' wrongful conduct that are uniform across the Classes.

128.    **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Classes.

129.    **Substantial Benefits.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The prosecution of separate actions by individual members of the Classes would impose heavy burdens upon the Courts and Defendant, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes, and would be dispositive of the interests of the other members not party to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

130.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual

members of the Classes, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

131.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

132.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## CLAIM 1

**FRAUDULENT INDUCEMENT**
**(On behalf of all Plaintiffs and Members of the Classes)**

133.    Plaintiffs incorporate by reference all preceding paragraphs as though fully forth herein.

134.    As set forth above, Vision Solar made numerous false representations of material and foundational aspects to induce homeowners such as Plaintiffs and members of the Class to borrow from Defendants to purchase Solar Panel Systems, including misrepresentations about the permits, licensing, costs, benefits, and financing terms associated with the Solar Panel Systems, that Vision Solar knew were false at the time and were likely to induce Plaintiffs and members of the Classes into signing agreements to purchase and finance Solar Panel Systems with Defendants.

135.    Defendants, as participants in the wrongful acts described and involvement in the unfair and deceptive sales, is liable for the wrongful acts committed by Vision Solar on Defendants' behalf.

31

136.    Vision Solar made these misrepresentations to induce Plaintiffs into taking actions to their detriment, including but not limited to:

a.    entering into onerous and one-sided agreements to borrow from Defendants to purchase Solar Panel Systems;

b.    incurring obligations and/or making payments on contracts for Solar Panel Systems that were not functioning and/or for which Vision Solar did not obtain proper permits;

c.    incurring obligations and/or making payments on contracts that were above the amounts which Vision Solar represented Plaintiffs would need to pay; and

d.    allowing Vision Solar to make alterations and construction on Plaintiffs' homes which would not result in functioning solar systems and inducing Plaintiffs to rely on such alterations and construction, including by making it financially onerous to turn back and not utilize solar panels and/or to use another solar panel company.

137.    As part of Vision Solar's efforts to fraudulently induce Plaintiffs, Vision Solar employed fraudulent, deceptive, and unfair sales tactics as well as targeted vulnerable homeowners such as individuals with low incomes, the elderly, and those with cognitive impairments, including by:

a.    initiating multiple unsolicited "cold" calls to set up in-home presentations for solar contracts;

b.    conducting in-home visits and in some cases remaining for several hours or despite being asked to leave;

32

c.   misrepresenting the implications of a consumer's signature, such as claiming it was only for "preapproval", falsely stating that a contract had already been established, or running a hard credit check without authorization;

d.   misrepresenting the performance of Vision Solar's Solar Panel Systems, such as claiming the Solar Panel Systems would "pay for themselves" by producing enough energy to more than offset loan or lease payments;

e.   misrepresenting that Vision Solar was authorized to install Solar Panel Systems and connect them to the power grid when they were not;

f.   urging consumers to agree to solar installations on the same day as the initial in-home solicitation;

g.   discouraging consumers from seeking legal advice before signing agreements;

h.   conducting in-home sales pitches to individuals who, due to cognitive or language barriers, were unable to make informed decisions;

i.   presenting contracts or documents for electronic signature on a salesperson's mobile device, making it difficult for consumers to sufficiently read and assess the documents beforehand; and

j.   delaying the furnishing of signed contract copies to consumers until several days or weeks later to deprive homeowners the ability to cancel or rescind the contract.

138.   Plaintiffs and members of the Classes took actions to their detriment in reliance on Vision Solar's representations, including, inter alia, by entering into contracts with Vision Solar

and Defendants, making payments to Vision Solar and Defendants, forgoing opportunities with other solar companies, and allowing Vision Solar to initiate construction and alterations on their homes.

139.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorney's fees, costs, and any other just and proper relief available under the laws.

## CLAIM 2

### UNJUST ENRICHMENT
### (On behalf of all Plaintiffs and Members of the Classes)

140.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

141.    Plaintiffs and members of the Classes conferred substantial benefits on Defendants by borrowing from Defendants to purchase Solar Panel Systems from Vision Solar and the Defendants knowingly and willingly accepted and enjoyed these benefits.

142.    Defendants, as participants in the wrongful acts described and involvement in the deceptive sales, are liable for the wrongful acts committed by Vision Solar on Defendants' behalf.

143.    Defendants either knew or should have known that Plaintiffs and members of the Classes entered into the financing agreements with Defendants with the expectation that the Solar Panel Systems would have the qualities, characteristics, and suitability for use represented and warranted by Vision Solar, and that Vision Solar would act in accordance with the representations made to Plaintiffs and members of the Classes.

144.    Despite knowing of Vision Solar's misconduct, Defendants continued lending to Vision Solar's victims because more loans meant more profits for Defendants from origination

fees, and Defendants further profited from packaging and selling the loans it originates to third-parties.

145.    Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiffs and members of the Classes.

146.    Plaintiffs and members of the Classes are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

147.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorney's fees, costs, and any other just and proper relief available under the laws.

## CLAIM 3

**VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**Conn. Gen. Stat. §§ 42-110b, *et seq.***
**(On behalf of Plaintiffs Annette Grenier, Bernard Grenier, and all similarly situated Connecticut Subclass Members)**

148.    Plaintiffs Annette Grenier and Bernard Grenier (collectively, the "Connecticut Plaintiffs"), incorporate by reference all preceding paragraphs as though fully set forth herein.

149.    The Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a, *et seq.*, declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

150.    Pursuant to Conn. Gen. Stat. § 42-110g(a), any person who has suffered a loss as a result of a violation of CUTPA may bring an action to obtain a declaratory judgment that an act or practice violates CUTPA and to enjoin such person who has violated, is violating, or is otherwise likely to violate CUTPA.

151. Defendants are "holders" within the meaning of Conn. Gen. Stat. § 42a-3-302. The loan agreement between Defendants and Plaintiffs and/or Class Members for the purchase and installation of Solar Panel Systems are "negotiable instruments," as defined by Conn. Gen. Stat. § 42a-3-104, held by and/or made payable to Dividend. Pursuant to Conn. Gen. Stat. § 42a-3-302, Defendants, as holders, are subject to defenses and claims in connection with the loan agreements.

152. Defendants incorporated the following language into loan agreements with the Connecticut Plaintiffs, as required by the FTC's Holder Rule, 16 C.F.R. § 433: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.  Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."

153. To the extent that Defendants are each a "holder in due course" as defined by Conn. Gen. Stat. § 42a-3-302, if Defendants took the notes for value, in good faith, and without notice that Plaintiffs or Class Members had any defense or claim in recoupment pursuant to Conn. Gen. Stat. § 42a-3-305, Defendants are still subject to all claims and defenses that Plaintiffs and Class Members could assert against Vision Solar under the FTC's Holder Rule, 16 C.F.R. § 433, including a claim pursuant to the CUTPA.

154. Pursuant to Conn. Gen. Stat. § 42-110g(a), any person who has suffered a loss as a result of a violation of CUTPA may bring an action for actual damages, attorney's fees, and court costs.

155. Defendants engaged in unfair and deceptive conduct by using Vision Solar to originate loans despite having knowledge of the unfair and deceptive conduct Vision Solar used to originate loans.

156.    Defendants unfair and deceptive conduct caused the Grenier Plaintiffs and members of the Classes to suffer ascertainable harm. The Grenier Plaintiffs and members of the Classes agreed to borrow from Defendants on the belief that Vision Solar would provide a functional Solar Panel System but, as Defendants knew, that was not the case. Instead, Plaintiffs and members of the Class received non-functional Solar Panel Systems or Solar Panel Systems that did not function as promised.

157.    Specifically, Defendants' use of Vision Solar to originate loan transactions despite knowing that Vision Solar was engaging in unfair and deceptive business practices is an unfair business practice that violates public policy.

158.    Vision Solar and Defendants, through their conduct, engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of their trade and commerce, including, but not limited to:

    a.    Systematically misrepresenting the benefits of Solar Panel Systems, eligibility for tax credits, and the financial terms of the loans and leasing transactions;

    b.    Training and allowing salespeople to use fraudulent, deceptive, unfair, and misleading tactics to induce homeowners to enter into financing agreements;

    c.    Targeting vulnerable individuals and employing tactics such as unauthorized credit checks and forging signatures on contracts;

    d.    Failing to ensure proper installation, permits, and functionality of the Solar Panel Systems;

      e.      Providing false promises and using deceptive tactics to retain customers and prevent cancellations;

      f.      Causing collection of financing payments from homeowners before their Solar Panel Systems were connected to the power grid; and

      g.      Ignoring homeowner complaints and continuing to undertake, finance, and support Vision Solar's fraudulent practices.

159.    Vision Solar also violated Conn. Gen. State § 42-110b by violating the Connecticut Home Improvement Act, Conn. Gen. Stat. Ch. 400. Specifically, Vision Solar:

      a.      Commenced work without obtaining the applicable building or construction permits as required, in violation of Conn. Gen. Stat. § 20-427(i); and

      b.      Failed to provide and deliver to homeowners a completed copy of home improvement contracts at the time such contracts were executed, in violation of Conn. Gen. Stat. § 20-429.

160.    Vision Solar's conduct as described above violated Conn. Gen. Stat. § 42-110b by violating Conn. Gen. Stat. §§ 20-334 and 20-341(d) including by Vision Solar applying for local electrical permits without having an appropriately licensed electrical contractor sign, or authorize the signing of, such applications.

161.    Vision Solar violated Conn. Gen. Stat. §§ 20-338b and 20-341(d) by engaging in, practicing, and offering to perform work requiring an electrical license pursuant to Conn. Gen. Stat. Ch. 393 without having an appropriately licensed electrical contractor.

162.    Defendants also engaged in unfair conduct pursuant to CUTPA in that their conduct (1) caused or is likely to cause substantial injury to Plaintiffs and members of the Class; (2) the injury Defendants caused could not have been reasonably avoided by Plaintiffs and members of

the Class, and (3) the injury caused by Defendants to Plaintiffs and members of the Class is not outweighed by countervailing benefits to them.

163.    Vision Solar's and Defendants' unfair and deceptive acts and practices as described above have caused the Grenier Plaintiffs and other similarly situated Connecticut homeowners to suffer losses of money and property, including, but not limited to, payments made and obligations incurred for non-functioning Solar Panel Systems, loss of eligibility for tax credits, and diminished property value due to improperly installed Solar Panel Systems.

164.    As a direct and proximate result of Defendants unfair and deceptive acts and practices, the Grenier Plaintiffs and other similarly situated Connecticut homeowners have suffered damages and are entitled to relief under CUTPA, including, but not limited to, actual damages, attorney's fees, and costs.

165.    Defendants knew, or should have known, that their conduct was unfair or deceptive in violation of Conn. Gen. Stat. § 42-110b, and as a consequence, Defendants are subject to civil penalties of not more than $5,000 per violation pursuant to Conn. Gen. Stat. § 42-110o(b).

**<u>CLAIM 4</u>**

**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. § 501.201, *et seq.***
**(On behalf of Plaintiffs Evelyn Perez, Jorge Perez, and all similarly situated Florida Subclass Members)**

166.    Plaintiffs Evelyn Perez and Jorge Perez (collectively, the "Florida Plaintiffs"), incorporate by reference all preceding paragraphs as though fully set forth herein.

167.    The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201, *et seq.*, provides that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

168.   Pursuant to Fla. Stat. § 501.211(1), anyone aggrieved by a violation of FDUTPA may bring an action to obtain a declaratory judgment that an act or practice violates FDUTPA and to enjoin such person who has violated, is violating, or is otherwise likely to violate FDUTPA.

169.   Pursuant to Fla. Stat. § 501.211(2), any person who has suffered a loss as a result of a violation of FDUTPA may bring an action for actual damages, attorney's fees, and court costs.

170.   Defendants engaged in unfair and deceptive conduct by using Vision Solar to originate loans despite having knowledge of the unfair and deceptive conduct Vision Solar used to originate loans.

171.   Defendants are "holders" within the meaning of Fla. Stat. § 671.201(b)(21). The loan agreement between Defendants and Plaintiffs and/or Class Members for the purchase and installation of Vision Solar's solar panels are "negotiable instruments," as defined by Fla. Stat. § 673.1041, held by and/or made payable to Defendants. Pursuant to Fla. Stat. § 673.3051, Defendants, as holders, are subject to defenses and claims in connection with the loan agreements.

172.   Defendants incorporated the following language into loan agreements with the Florida Plaintiffs, as required by the FTC's Holder Rule, 16 C.F.R. § 433: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.  Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."

173.   To the extent that Defendants are "holders in due course" as defined by Fla. Stat. § 673.3021, if it took the notes for value, in good faith, and without notice that Plaintiffs or Class Members had any defense or claim in recoupment pursuant to Fla. Stat. § 673.3051, Defendants are still subject to all claims and defenses that Plaintiffs and Class Members could assert against

Vision Solar under the FTC's Holder Rule, 16 C.F.R. § 433, including a claim pursuant to the FDUPTA.

174.    Vision Solar and Defendants through their conduct as described above, engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of their trade and commerce, including, but not limited to:

a.    Defendants using Vision Solar to unfairly and deceptively induce homeowners to borrow from Defendants;

b.    Defendants failing to ensure Vision Solar had properly installed the Solar Panel Systems, had obtained the permits required, and had used licensed professionals to install the permits before requiring payments from Plaintiffs;

c.    Vision Solar systematically misrepresenting the benefits of Solar Panel Systems, eligibility for tax credits, and the financial terms of the loans and leasing transactions;

d.    Vision Solar training and allowing salespeople to use fraudulent, deceptive, unfair, and misleading tactics to induce homeowners to enter into financing agreements;

e.    Vision Solar targeting vulnerable individuals and employing tactics such as unauthorized credit checks and forging signatures on contracts;

f.    Vision Solar failing to ensure proper installation, permits, and functionality of the Solar Panel Systems;

g.    Vision Solar and Defendants providing false promises and using deceptive tactics to retain customers and prevent cancellations;

    h.      Vision Solar causing collection of and Defendants actually collecting financing payments from homeowners before the Solar Panel Systems are connected to the power grid; and

    i.       Defendants ignored homeowner complaints and continued undertaking, financing, and supporting Vision Solar's unfair, deceptive, and fraudulent practices.

175.   Defendants further engaged in unfair and deceptive acts and practices by continuing to fund loans to purchase Vision Solar's Solar Panel Systems, despite its awareness that such systems were nonperforming or underperforming.

176.   Defendants' unfair and deceptive acts and practices caused Florida Plaintiffs and other similarly situated Florida homeowners to suffer losses of money and property, including, but not limited to, payments made to Defendants for non-functioning Solar Panel Systems, loss of eligibility for tax credits, and diminished property value due to improperly installed Solar Panel Systems.

177.   As a direct and proximate result of Defendants' and Vision Solar's unfair and deceptive acts and practices, Florida Plaintiffs and other similarly situated Florida homeowners have been aggrieved by Defendants' and Vision Solar's conduct, have suffered damages, and are entitled to relief under FDUTPA, including, but not limited to, actual damages, attorney's fees, and costs.

178.   The Florida Plaintiffs individually and on behalf of all others similarly situated, thus seek (a) a declaration that Defendants' acts and practices as described above violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; (b) an award of actual damages; (c) an award of attorney's fees and costs pursuant to Fla. Stat. § 501.2105; (d) an

order enjoining Defendants from continuing to engage in the unfair and deceptive acts and practices described above; (e) an order for the recission of the sales and financing agreements as well as compensatory damages; and (f) any further relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendant as to each and every count, including:

A. An order certifying this action and the Classes requested herein as a class action, designating Plaintiffs as the representatives of the Classes, and appointing Plaintiffs' counsel as counsel to the Classes;

B. An order declaring (i) that Defendants' actions constitute fraudulent inducement; (ii) that Defendants' actions constitute unfair and deceptive business practices in violation of the consumer protection statutes of Connecticut and Florida; (iii) that all agreements between Plaintiffs and members of the Classes and Defendants are null and void; (iv) that Defendants were unjustly enriched as a result of its wrongful conduct at the expense of Plaintiffs and members of the Classes; and (v) that Defendants are liable to Plaintiffs and members of the Classes as described herein, for damages arising therefrom;

C. An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including declaring all contracts between Plaintiffs and Defendants null and void, enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

D.  A judgment awarding Plaintiffs and members of the Classes all appropriate damages, in an amount to be determined at trial;

E.  A judgment awarding equitable, injunctive, and/or declaratory relief as may be appropriate.

F.  A judgment awarding Plaintiffs and members of the Classes prejudgment and post-judgment interest, as permitted by law;

G.  A judgment awarding Plaintiffs and members of the Classes costs and fees, including attorneys' fees, as permitted by law; and

H.  Other legal, equitable or further relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL**

Plaintiffs demand a trial for all issues so triable.

DATED:           December 22, 2023              Respectfully submitted,

**SILVER GOLUB & TEITELL LLP**

*/s/ Ian W. Sloss*

Ian W. Sloss (ct31244)
Johnathan Seredynski (ct31246)
Krystyna Gancoss (*pro hac vice* forthcoming)
Kate Sayed (*pro hac vice* forthcoming)
Brett Burgs (*pro hac vice* forthcoming)
One Landmark Square, Floor 15
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
isloss@sgtlaw.com
jseredynski@sgtlaw.com
kgancoss@sgtlaw.com
ksayed@sgtlaw.com
bburgs@sgtlaw.com

Jeffrey Gentes (ct28651)
Connecticut Fair Housing Center
60 Popieluszko Court
Hartford, CT  06106

44

(860) 263-0741
(860) 247-4236 fax
jgentes@ctfairhousing.org

Ronald A. Marron (*pro hac vice* forthcoming)
Alexis M. Wood (*pro hac vice* forthcoming)
Kas L. Gallucci (*pro hac vice* forthcoming)
LAW OFFICES OF RONALD A.
MARRON
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665
ron@consumeradvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com